United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 21, 2004**

Charles R. Fulbruge III
Clerk

REVISED June 4, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-51182
_____

VULCAN MATERIALS COMPANY,

                              Plaintiff - Appellant,

                    versus

THE CITY OF TEHUACANA,

                              Defendant - Appellee.

_____

Appeals from the United States District Court
for the Western District of Texas
_____

Before JOLLY and WIENER, Circuit Judges, and WALTER, District Judge.[1]

E. GRADY JOLLY, Circuit Judge:

Vulcan Materials Company ("Vulcan") owns a land lease with the right to mine limestone. The problem is that a substantial part of the land and the mining is within the boundaries of the City of Tehuacana ("the City") in Limestone County, Texas. The City passed an Ordinance in 1998 forbidding quarrying or mining activities within the City limits. Vulcan contends that the Ordinance constitutes a public taking and violates its rights under both the

_____

[1]District Judge of the Western District of Louisiana sitting by designation

United States and Texas Constitutions.  All that remains to be decided in this appeal, however, is the propriety of the district court's grant of the City's Motion for Summary Judgment dismissing Vulcan's takings claim under the Texas Constitution.  We ultimately hold that the case turns on whether the quarry mining constitutes a public nuisance and consequently remand for a jury determination on this issue.

I

The City of Tehuacana has a population of approximately 300 to 350 people and occupies a small geographical area in Limestone County, Texas.

In 1993, Smith Crushed Stone, Inc. ("SCS") leased limestone quarry rights on three contiguous tracts of land (Tracts 1-3) adjacent to Tehuacana's City limits and also leased four additional contiguous tracts of land within the City limits.  It did no mining, however, on these tracts.  In October 1997, Vulcan purchased the assets of SCS in Limestone County, including the limestone quarry rights leased by SCS.  This leasehold interest allows Vulcan to prospect, explore, mine, operate for and produce "by strip mining or open pit mining all rock, stone, limestone and similar rock like materials" and grants Vulcan the right to exclude all other uses of the Tracts as necessary to enable the quarrying.

Before its acquisition of SCS's assets, Vulcan hired local attorney Bobby Reed to determine whether any ordinances would prevent Vulcan from quarrying, including those tracts located

2

within the City. Reed attested that both the Mayor and City Secretary advised him that no ordinances existed nor were in the planning stages that would prevent Vulcan from pursuing quarrying operations within the City.

The leases cover land both within and outside the Tehuacana City limits. Vulcan sought to mine approximately 48 acres located inside City limits, described as Tracts 4-7. This property is 2/3 to 3/4 of a mile wide and abutted by several public roads that access several homes, some of which are located just across the street from the property. Outside Tehuacana City limits, Vulcan currently mines and operates a rock crushing facility on an approximate additional 250 acres of land located immediately adjacent to Tracts 4-7.

In early 1998, Vulcan began planning active quarrying on Tracts 4-7. Vulcan determined access points and ramp sites, determined where in that area it wanted to quarry, cleared land, stripped overburden, and otherwise prepared the tracts for physical use. There has been no recent mining on these tracts.

In October 1998, Vulcan sought and obtained permission from the Texas Railroad Commission to construct berms on Tracts 4-7. Vulcan also prepared the quarry floor and removed overburden on Tract 6 to prepare for a blast ("shot") to loosen limestone in the quarry. The City residents began to express opposition to the proposed operations and soon the City Council began to consider adopting an ordinance to regulate Vulcan's quarrying activities.

3

Vulcan conducted a test shot on Tract 6 on October 25, 1998, in an abandoned pit. Another shot and similar preparatory activities were conducted on Tract 6 on November 25 and 26, 1998. Although approximately 400-500 tons of limestone were processed through Vulcan's plant as a result of these two blasts, this amount was only a small percentage of what Vulcan normally retrieved and processed during one day in its regular operations. Some of the finished product was tested, and some was put into inventory and sold in the ordinary course of business.

Before it passed the contested ordinance, the City held public hearings. Numerous citizens complained about Vulcan's operations outside the City as well as the two blasts conducted inside the City limits. Specifically, the citizens complained that Vulcan's activities caused shaking of houses, lifting furniture off the floor, rattling windows, shaking and jostling people in their homes, noise, dust, smoke, property damage, fear, interference with enjoyment of property and life, interference with the use of public roads and streets, and exposure to fly and throw rock. The City, and the district court, cite one flyrock incident in particular that had occurred when SCS was conducting quarrying activities on the tracts outside of the City in which a 500-pound boulder was propelled into a Tehuacana resident's yard. Residents also complained that the mining activities caused springs and wells in the area to dry up.

4

On December 8, 1998, the City Council passed the "Ordinance Forbidding Quarrying or Blasting Operations within the City Limits" (the "1998 Ordinance") and on December 15, 1998, Vulcan filed its complaint in federal district court, under both the United States and Texas Constitutions.[2]  As mentioned above, the only claim

---

[2]The 1998 Ordinance states, in pertinent part:

> AN ORDINANCE FORBIDDING QUARRYING OR BLASTING OPERATIONS WITHIN THE CITY LIMITS
>
> WHEREAS, the City of Tehuacana is predominantly a residential city, with little of no industry inside city limits; and
>
> WHEREAS, a rock quarry operating near the city limits has indicated its intention to begin quarrying and blasting operations within the city limits of the City of Tehuacana; and
>
> WHEREAS, the quarrying and blasting operations would constitute a public nuisance and result in excessive noise and vibration to city residents; and
>
> WHEREAS, the quarrying and blasting operations could constitute a physical danger to residents of the city due to the possibility of overfly of rock or other materials from blasting onto residents of the city or property of residents of the city; and
>
> WHEREAS, the blasting and quarrying operations would have a detrimental effect on the quality of residential life in the city due to vibration, excessive noise from blasting, excessive noise from the operation of heavy equipment, the potential for injury or death from overfly of rock, (flyrock), air blast damage, ground motion damage, and excessive dust from operations.
>
> NOW THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF TEHUACANA:

remaining in this appeal is Vulcan's takings claim under the Texas Constitution.

In its September 25, 2002 Memorandum Opinion and Order, the district court granted the City's Motion for Summary Judgment, holding that the 1998 Ordinance is not an unconstitutional taking or an inverse condemnation under Texas law. The district court held, as a matter of law, that the 1998 Ordinance substantially advances a legitimate state interest. The court also made the following determinations with regard to Vulcan's regulatory takings claims:

---

SECTION I. It shall be unlawful for any person, company, entity, or corporation to engage in the following activities within the city limits of the City of Tehuacana, Limestone County, Texas:

A. the quarrying or mining of rock utilizing blasting operations or use of explosives, or surface mining;

B. the use of explosives for the purpose of blasting rock, or in connection with mining or quarrying operations;

C. the use of heavy equipment in connection with quarrying or mining operations within the city limits of Tehuacana, Limestone County, Texas;

D. the use of explosives for any commercial or industrial activity or for any other reason except the use of fireworks in connection with celebrations as may be allowed by law from time to time.

Tehuacana, Tex., Ordinance 12898 (Dec. 8, 1998).

6

> [T]he activities the 1998 Ordinance seeks to regulate constitute a nuisance under Texas law. The 1998 Ordinance therefore restricts no legitimately owned property right. Even if the Court were to assume that the 1998 Ordinance did somehow restrict a recognized property right, a taking under Texas law would not occur because Vulcan has not been deprived of all economically viable use of its property. Only a small portion of its property is affected by the Ordinance, and the property still has an economically viable use. Although Vulcan argues that high explosives and heavy equipment are required to extract the limestone from the ground, the Court notes that neither were required to extract the stone used to build the pyramids. Obviously, while extraction of the limestone without explosives and heavy equipment may be more expensive and labor intensive, it is not impossible to operate such a quarry without violating the 1998 Ordinance. Accordingly, judgment will be entered to the effect that the 1981 Ordinance does not prohibit quarrying, and that the 1998 Ordinance is not an unconstitutional taking or an inverse condemnation under Texas law.

Mem. Opin., p. 20. Vulcan appeals. We vacate the district court's grant of summary judgment to the City and remand.

## II

This Court reviews the granting of summary judgment de novo, applying the same standards used by the district court. Thomas v. Barton Lodge II, Ltd., 174 F.3d 636, 644 (5th Cir. 1999); Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Summary judgment is only appropriate if no reasonable jury could differ in weighing the evidence. Peel & Co.

7

v. Rug Mkt., 238 F.3d 391, 398 n.37 (5th Cir. 2001).  The Court views the evidence in the light most favorable to the nonmoving party.  Gillis v. Louisiana, 294 F.3d 755, 758 (5th Cir. 2002).

Under Texas law, although determining whether a property regulation is unconstitutional requires consideration of a number of factual issues, the ultimate question of whether there has been a regulatory taking is a question of law.  Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 932-33 n.3 (Tex. 1998).

### III

Before we evaluate whether the Ordinance constitutes a taking under the Texas Constitution, we must first address the City's arguments that the Ordinance is not a land use regulation.  Instead, the City contends that the Ordinance is a health and safety regulation that redresses an activity under its police power and is not subject to the public takings law of Texas.[3]  The district court was obviously unpersuaded by the City's argument because it addressed the takings issue presented in this case.

---

[3]The district court refrained from holding that the Ordinance is not a land use regulation and went on to evaluate Vulcan's claims under Texas takings law.  However, the court indicated its doubt that this was a taking and commented that the Ordinance did not prohibit the mining of limestone; instead, according to the district court, the ordinance merely prohibited the mining of limestone by using blasting and heavy machinery.  The district court noted that the Egyptian Pyramids were built without the use of explosives or heavy machinery.  However, we hesitate to compare Vulcan's land use activities to those of the ancient Egyptians. See U.S. CONST. amend. XIII.

8

No one doubts that a municipality may enact reasonable regulations to promote the health, safety, and general welfare of its people. College Station v. Turtle Rock Corp., 680 S.W.2d 802, 805 (Tex. 1984)(citing Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396 (1943)). However, "if a governing body, in the exercise of its police power, enacts a regulation that goes too far in the regulation of private property, that governing body may be held to have taken the property, thus requiring it to pay compensation to the owner." 32 TEX. JUR. 3D *Eminent Domain* § 9 (1998). The following factors are relevant in determining if the Ordinance has "gone too far" and effected a taking of Vulcan's property: "(1) whether the property was rendered wholly useless; (2) whether the governmental burden created a disproportionate diminution in economic value or caused a total destruction of the value; and (3) whether the government's action against an economic interest of an owner was for its own advantage." Id.

In the instant case, we think that the Tehuacana Ordinance goes too far to be considered a mere exercise of the City's police power. The only property interest at issue here is Vulcan's lease of the right to mine limestone from these tracts and Tehuacana's Ordinance effectively prohibits any and all mining of limestone within City limits.

The Ordinance makes clear that its purpose is to prohibit the very activity that Vulcan's leasehold permits. First, the Ordinance is entitled "AN ORDINANCE FORBIDDING QUARRYING OR

9

BLASTING OPERATIONS WITHIN THE CITY LIMITS." Second, the Ordinance makes clear that it is targeting "a rock quarry operating near the city limits [that] has indicated its intention to begin quarrying and blasting operations within the city limits." Finally, the Ordinance expressly prohibits "the quarrying or mining of rock utilizing blasting operations or use of explosives" and "the use of heavy equipment in connection with quarrying or mining operations."

In sum, it is simply undeniable that the Ordinance specifically was adopted to completely prohibit Vulcan from engaging in mining on Tracts 4-7, and that the only right possessed by Vulcan in Tracts 4-7 was the right to mine limestone. We therefore hold that the Ordinance is a land use regulation.

## IV

We now turn to address the district court's holding that the Ordinance does not constitute a public taking of Vulcan's leasehold interest under the Texas Constitution. The Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for ... public use without adequate compensation being made[.]" TEX. CONST. art. I, § 17.[4] Texas classifies takings into

---

[4]Vulcan disputes the applicability of federal takings standards in evaluating whether a taking has occurred under the Texas Constitution. Generally, Texas constitutional standards have been considered more protective of property owners than federal standards. City of Glenn Heights v. Sheffield Development Co., Inc., 61 S.W.3d 634, 644 (Tex.App.-Waco 2001, pet. granted). However, in Mayhew v. Town of Sunnyvale, 964 S.W.2d 922 (Tex. 1998) the Texas Supreme Court assumed, without specifically holding, that the Texas and federal takings standards are coextensive. Mayhew, 964 S.W.2d at 932. Like the Mayhew court, in the absence of clear

10

one of two categories:  physical takings or regulatory takings. Mayhew, 964 S.W.2d at 933.  A physical taking occurs when "the government authorizes an unwarranted physical occupation of an individual's property."  Id.  Because there is no allegation that Tehuacana has physically occupied Vulcan's property, if Vulcan is to be compensated the Ordinance must constitute a regulatory taking.  Id.

A regulatory taking can occur in two ways: (1) when the regulation does not substantially advance legitimate state interests, id. at 933-34, or (2) when the regulation either denies the owner of all economically viable use of his property -- a categorical taking -- or unreasonably interferes with a property owner's rights to use and enjoy his property -- a partial taking. Id. at 935 (citing, inter alia, Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015-19 & n.8 (1992)).

"The 'substantial advancement' requirement examines the nexus between the effect of the ordinance and the legitimate state interest it is supposed to advance."  Id. at 934.  Numerous governmental purposes and regulations may satisfy the "substantially advance" prong including enhancing the quality of

_____

Texas authority, we will evaluate Vulcan's claims under the more established federal standards, keeping in mind that greater protection of property rights generally may be afforded under the Texas constitution.

11

life and protecting the community from the ill effects of urbanization.  Id. at 934-35.

Even assuming, however, that the Ordinance substantially advances Tehuacana's legitimate interests, a taking can still occur if the Ordinance denies Vulcan all economically viable use of its property or unreasonably interferes with its right to use and enjoy the property.  Id. at 935 (citing, inter alia, Lucas, 505 U.S. at 1015-19 & n.8).

Determining whether a regulation unreasonably interferes with the landowner's right to use and enjoy his property requires a court to consider "the economic impact of the regulation and the extent to which the regulation interferes with distinct investment-backed expectations."  Id. at 935 (citing, inter alia, Lucas, 505 U.S. at 1019 n.8).  "The first factor, the economic impact of the regulation, merely compares the value that has been taken from the property with the value that remains in the property."  Id. at 935-36.  The second factor, the landowner's investment-backed expectations, considers the "existing and permitted uses of the property" as the "primary expectation" of the landowner.  Id. at 936 (citing, inter alia, Lucas, 505 U.S. at 1017 n.7).  In contrast, "[d]etermining whether all economically viable use of a property has been denied entails a relatively simple analysis of whether value remains in the property after the governmental action."  Id.

12

Given the facts of this case and the limited nature of Vulcan's property interest, i.e., a lease for the sole purpose of mining limestone, it is clear that the "denial of all economically viable use" inquiry will be dispositive for the reasons set forth below.

In resolving whether "value remains" in Vulcan's lease, we must first examine which particular limestone mining rights are relevant to this determination -- all of Vulcan's leasehold interests or only Tracts 4-7.[5] The district court held that the relevant parcel in this case included not only the small acreage leased within the City limits (48 acres), but also the adjacent 250 acres that is also part of the lease.[6] Vulcan attacks this

_____

[5]The City argues that the right to mine limestone possessed by Vulcan is merely one of a "bundle of sticks" and that the value of the entire bundle of sticks, as opposed to just one stick -- Vulcan's leasehold interest -- must be totally diminished before a categorical taking has taken place. This argument is misplaced in this case.

Clearly, "where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a [categorical] taking because the aggregate must be viewed in its entirety" -- i.e., the relevant parcel includes all of the rights possessed by the owner. Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 497 (1987) (quoting Andrus v. Allard, 444 U.S. 51, 65-66 (1979)). Vulcan, however, does not possess a "full 'bundle' of property rights" and, therefore, the relevant parcel for the purposes of its takings claim is the only estate in which it has an interest -- the limestone lease -- and the value of other interests -- i.e., surface agricultural uses -- cannot be considered in determining whether all economically viable use of the property has been destroyed. See generally The City of Whitney Benefits, Inc. v. United States, 926 F.2d 1169 (Fed. Cir. 1991).

[6]This issue has been referred to as the "denominator problem" and has been described as follows:

13

characterization of the relevant parcel and contends that the court should consider only those tracts that the City had the authority to regulate -- Tracts 4-7.

Neither party has cited a Texas case directly on point and we therefore must make an <u>Erie</u> "guess" and follow the rule that we conclude the Texas Supreme Court would adopt. <u>American Indem. Lloyds v. Travelers Property & Cas. Co.</u>, 335 F.3d 429, 435 (5th Cir. 2003).

The City is correct that, under federal takings jurisprudence, when the owner of property intends to use a parcel of property as an integrated part of the whole of a larger tract, the entirety of

---

> Essentially, the denominator factor works as follows:  if the amount of Blackacre owned by Landowner is 2 acres, and the amount of Blackacre affected by the government regulation is 1 acre, the denominator is 2 and the numerator is 1; thus, the property's use is diminished by fifty percent.  The <u>Lucas</u> rationale relied on a one hundred percent deprivation of all economically viable use of the property.  If a one hundred percent deprivation is required, then the regulation of property in the above example is not a taking because Landowner may continue to use one-half of Blackacre.

Stephanie E. Hayes Lusk, COMMENT: *Texas Groundwater: Reconciling the Rule of Capture With Environmental and Community Demands*, 30 ST. MARY'S L.J. 305, 339 (1998).  In this case the numerator would be the tracts of land affected by the regulation -- Tracts 4-7. If the denominator is limited to Tracts 4-7, then Vulcan has been deprived of one hundred percent of its property.  On the other hand, if the denominator includes the land outside Tehuacana City limits in addition to Tracts 4-7, then Vulcan's leasehold interests retain value even after the regulation, and consequently no categorical taking has occurred.

14

the property is treated as one tract for purposes of a takings analysis.    Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 497, 500-01 (1987); Penn Central Transp. Co. v. New York City, 438 U.S. 104, 130-31 (1978).    The Supreme Court explained this rule in Concrete Pipe, in which it stated:

> [A] claimant's parcel of property [can] not first be divided into what [is] taken and what [is] left for the purpose of demonstrating the taking of the former to be complete and hence compensable.  To the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of, the parcel in question.

Concrete Pipe & Prods. v. Construction Laborers Pension Trust, 508 U.S. 602, 644 (citing Penn Central, 438 U.S. at 130-31, and Keystone, 480 U.S. at 497).

Although these cases require the court to look at the integrated whole of the landowner's property, they do not extend to support the City's contentions; although each case held that the relevant parcel included the entirety of the property, the regulating authority had the power to regulate all of that property.  For instance, in Penn Central the New York Landmarks Preservation Commission designated Grand Central Station as a "landmark" and the landmark site was designated as the tax block occupied by the Station.  Penn Central, 438 U.S. at 115-16.  In conducting its analysis, the Supreme Court only considered other holdings of Penn Central in the Station's tax block -- not its other holdings in the City.  Penn Central, 438 U.S. at 130-31.

15

Similarly, in Keystone, the Pennsylvania Subsistence Act only regulated a small fraction of Keystone's property -- the support coal -- but all of its interests -- mineral and support estates -- in Pennsylvania were subject to the Act.  Keystone, 480 U.S. at 499 n.27 (stating that "[t]he question here is whether there has been any taking at all when no coal has been physically appropriated, and the regulatory program places a burden on the use of only a small fraction of the property that is <u>subjected to the regulation</u>" (emphasis added)).

Thus in each of these cases the Supreme Court rejected the plaintiff's attempts to segregate the adversely affected property from the regulated whole, and to claim it is the only relevant parcel.  See Penn Central, 438 U.S. at 130-31; Keystone, 480 U.S. at 499.  Vulcan, unlike the property owners in Penn Central and Keystone, however, is not arguing that the takings analysis should segregate only the adversely affected parcel from the regulated whole; it contends that the relevant parcel should include only the property "subject to" the regulation and not its remaining property outside the City limits, which is beyond the regulator's reach.[7]

The City cites Appolo Fuels, Inc. v. United States, 54 Fed. Cl. 717 (2002), and argues that the court in that case considered, as part of the relevant parcel, property beyond the reach of the

---

[7]Indeed we would be presented with a different question if Vulcan owned other adjacent land in the City which, although subject to the Ordinance, would be unaffected by it.

16

regulating body's jurisdiction. Appolo owned several adjacent tracts of land, some of which were in the Little Yellow Creek watershed and others that were not. The City of Middlesboro, Kentucky and the National Parks Conservation Association filed a petition with the Office of Surface Mining Reclamation and Enforcement ("OSM") seeking to have the area within the watershed designated as unsuitable for mining under the Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. §§ 1201 et seq. The Director designated the entire petition area -- all of Appolo's leases within the watershed -- as unsuitable for surface mining but agreed to allow underground mining from outside the watershed. In response to this designation Appolo filed a regulatory takings claim.

Appolo, contending that a categorical taking had been effected, argued that the relevant parcel, or denominator, should include only those areas within the watershed -- those areas where mining was prohibited. Appolo, 54 Fed. Cl. at 724. The court, however, rejected Appolo's argument and held that the relevant parcel included other holdings of Appolo outside the watershed area, on which mining was allowed. Id. at 728-30.

Contrary to the City's argument, the court does not appear to have included property over which the regulating authority had no jurisdiction; all of Appolo's property was subject to the SMCRA, an Act of nationwide force. See Hodel v. Va. Surface Mining & Reclamation Ass'n, 452 U.S. 264, 268 (1981) (noting that the SMCRA

17

was intended to establish a nationwide program to protect society and the environment from the adverse effects of strip mining). In any event, even if the City's interpretation of Appolo is correct, we hesitate to conclude that the Texas Supreme Court would be persuaded by a single Federal Court of Claims case.

Because the City has not cited any authority, Texas or federal, that considers property outside the regulator's jurisdiction in determining a taking, we cannot conclude that the Texas Supreme Court would adopt that position. Indeed, it appears self-evident that when a regulator exercises its regulatory jurisdiction to the fullest extent possible -- stripping all value from the property within its reach -- it has acted categorically -- i.e., absolute or unqualified. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 352 (1993). Furthermore, it would seem incongruous to say that when the regulating body has "seized" through regulation all value possessed by the owner it has acted non-categorically; instead, when the regulating body takes all that the owner possesses there is perforce a categorical, not a partial, taking by that body.[8] Accordingly, we hold that the relevant parcel in this case is Vulcan's leasehold interest on the property within the City limits -- Tracts 4-7.

---

[8]The situation would be different, of course, if the City of Tehuacana were unincorporated without a governing authority, and it were Limestone County that prohibited all quarrying on Tracts 4-7, while allowing quarrying on the remainder of Vulcan's property. The county would have exercised its authority in a non-categorical manner.

18

In sum, the only property interest possessed by Vulcan is the right to mine limestone on the land. Further, the only portion of this property interest that is relevant to our takings analysis is the quarrying right within the City. Finally, in accordance with our discussion above, we find that the Ordinance effectively prohibits all mining of limestone on Tracts 4-7. Consequently, the Ordinance deprives Vulcan of all value of its property interest -- quarrying rights -- in the relevant parcel -- Tracts 4-7. We thus hold that the Ordinance constitutes a categorical taking, which renders Vulcan's relevant leasehold interest valueless.[9]

V

Finally, the City argues that, under Texas law, Vulcan's proposed activities would constitute a nuisance precluding Vulcan's recovery of compensation. This argument finds its origins in <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003 (1992). There, with respect to regulations that prohibit all economically beneficial use of property, Justice Scalia states:

> Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the

---

[9]Because we have found that the Ordinance constitutes a categorical taking, it is not necessary to address Vulcan's argument that the Ordinance constitutes a partial taking. Although Vulcan's interests outside the City are not part of the denominator when determining whether a categorical taking has occurred, this is not to conclude that these interests are irrelevant in the calculation of the value of the taken property interests when determining just compensation. Such matters are reserved for a later time if and when such a determination is necessary.

19

> State's law of property and nuisance already place upon land ownership. A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts--by adjacent landowners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise.

Lucas, 505 U.S. at 1029. Thus, under federal law, even if the current value of the claimant's property has been destroyed, the claimant cannot recover if the "background principles of the State's law of property and nuisance" would have prohibited that activity as a nuisance (the "nuisance exception").

The City contends that under the Lucas "nuisance exception" the Ordinance is not a taking because the City could abate Vulcan's activities as a nuisance and such a property restriction "inhered in the title itself" because "background principles" of Texas property law allow the state, or adjacent landowners, to abate nuisances. Thus, we must first decide whether the nuisance exception -- found in federal law -- would be applied by the Texas Supreme Court; if so, we must then decide whether the district court properly held that the exception barred Vulcan's recovery in this case.

A

Neither party has cited a case in which the Lucas nuisance exception has been adopted by the Texas Supreme Court; nor have we found one. So, once again, we are required to predict whether the

20

principles set forth in <u>Lucas</u> would be adopted by the Texas Supreme Court.  <u>American Indem. Lloyds</u>, 335 F.3d at 435.  We conclude the Texas Supreme Court would adopt such a rule in the proper case.[10]

First, although <u>Mayhew</u> does not cite the specific "nuisance exception" discussed in <u>Lucas</u>, it is evident in the court's own application of <u>Lucas</u> that the <u>Mayhew</u> court found the reasoning of <u>Lucas</u> to be uniformly persuasive.  The <u>Mayhew</u> court cited <u>Lucas</u> multiple times for various propositions.  Moreover, other Texas courts have looked to <u>Lucas</u> when evaluating takings claims under the Texas Constitution.  <u>See</u> <u>County Line Joint Venture v. City of Grand Prairie</u>, 2001 Tex. App. LEXIS 6000, *4 (Tex. App.--Dallas, Aug. 31, 2001, writ denied); <u>Texas Natural Resource Conservation Comm'n v. Accord Agric., Inc.</u>, 1999 Tex. App. LEXIS 6898, *12-13 (Tex. App. 3d Dis.--Austin Sept. 10, 1999).[11]  Although this

_____

[10]Although we make this particular determination, we recognize that it is speculative.  However, because Texas courts have repeatedly relied on <u>Lucas</u> in numerous cases, and heavily so in <u>Mayhew</u>, and because we consider it to be the better rule, we conclude that Texas courts would apply the <u>Lucas</u> nuisance exception.  We are fully aware of statements by Texas courts that the Texas Constitution provides more protections to property owners than the United States Constitution -- protecting against both the taking and damaging of property.  Even so, we do not see how the application of this rule categorically negates such generalized favorable treatment of property rights in takings cases.

[11]We acknowledge that this court has previously held that <u>Lucas</u> is of doubtful relevance when considering a takings claim under the Texas Constitution.  <u>Hidden Oaks v. City of Austin</u>, 138 F.3d 1036, 1042 (5th Cir. 1998).  However, although <u>Hidden Oaks</u> cites the Texas Court of Appeals opinion in <u>Town of Sunnyvale v. Mayhew</u>, 905 S.W.2d 234, 259 (Tex. App.–Dallas 1995, writ granted) (reversed by <u>Mayhew v. Town of Sunnyvale</u>, 964 S.W.2d 922 (Tex. 1998)), it does not cite the Texas Supreme Court's opinion, <u>Mayhew v. Town of</u>

21

uncritical reliance on Lucas by the Texas Supreme Court is not conclusive of whether the Texas Supreme Court would have looked favorably on the "nuisance exception," it does impress us when making an Erie guess.

Moreover, although it is true that the analysis and holding of Lucas now advocated by the City was not expressly adopted by Mayhew, this failure certainly cannot be construed as a rejection of the nuisance exception by the Texas Supreme Court. Mayhew involved a takings claim against the Town of Sunnyvale based on Sunnyvale's refusal to approve Mayhew's development plan and to rezone property to accommodate his proposed subdivision. Mayhew, 964 S.W.2d at 926. It was not necessary for the court to address the effect of the nuisance exception upon a categorical taking, however, because the court found that Mayhew had not been denied all economically viable use -- his property retained a value of over $2 million. Mayhew, 964 S.W.2d at 937.[12]

---

Sunnyvale, 964 S.W.2d 922 (Tex. 1998), which heavily relies on Lucas. Accordingly, it is now clear that Texas courts attribute significant relevance to Lucas.

[12]Although Mayhew did not consider the Lucas "nuisance exception" with respect to a categorical taking, it did discuss a similar principle with respect to Mayhew's investment-backed expectations. The Mayhew court noted the "primary expectation" of the property owner is shaped by the existing and permitted uses of the property. Mayhew, 964 S.W.2d at 936 (citing Penn Central, 438 U.S. at 136 and Lucas, 505 U.S. at 1017 n.7 (owner's reasonable expectations shaped by uses permitted by state law)).

22

Second, we are persuaded that the "nuisance exception" is simply a sound rule. All property in Texas is held subject to the valid exercise of the police power and the City is not required to compensate Vulcan if its exercise of police power is reasonable. City of College Station v. Turtle Rock Corp., 680 S.W.2d 802, 804 (Tex. 1984). "Although it is fundamental that the government cannot destroy the property of private citizens at will and without justification, the government is given, through its police powers, the ability to abate public nuisances." LJD Properties, Inc. v. City of Greenville, 753 S.W.2d 204, 207 (Tex.App. - Dallas 1988).

Third, courts should be cautious in finding a taking where the claimant's activities "are tantamount to public nuisances." Keystone, 480 U.S. at 491. This approach is consistent with the concept of reciprocity of advantage as described by Justice Stevens in Keystone:

> Under our system of government, one of the State's primary ways of preserving the public weal is restricting the uses individuals can make of their property. While each of us is burdened somewhat by such restrictions, we, in turn, benefit greatly from the restrictions that are placed on others. These restrictions are properly treated as part of the burden of common citizenship. Long ago it was recognized that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community, and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it.

Id. at 491-92 (citations and quotations omitted).

23

Justice Stevens only recognizes that all property owners are required to use their property in a manner that does not constitute a public nuisance.

Finally, it seems evident to us that the question whether the Texas Supreme Court would formally incorporate the nuisance exception as part of a takings analysis has no practical significance: the existence of a nuisance, vel non, will nevertheless be injected in this takings case at some point. We arrive at this conclusion because "a right of recovery is established by proof of injury to some right of the property, and the damages are measured by the extent of the injury to that right." 32 TEX. JUR. 3D *Eminent Domain* § 161 (1998). Thus, Vulcan cannot establish damages unless it has a property right to mine limestone; if it has no such right it can suffer no injury and, consequently, has not been denied "just compensation" by the public taking. See Holly Doremus, *Takings and Transitions*, 19 J. LAND USE & ENVTL. L. 1, 12 (2003) (stating that "[t]he term 'taking' implies the loss of something once held, which means a change in one's property rights. There can be no taking without change."). It is only a matter of what point this element is introduced into the case -- no taking has occurred because of the "nuisance exception" or, assuming a taking, no damages were sustained because the activity would be an abatable public nuisance. See LJD Properties,

753 S.W.2d at 207 (stating that the "the government is given, through its police powers, the ability to abate public nuisances").

Thus, we hold that <u>if</u> the effect of the Ordinance challenged here -- the prohibition of Vulcan's quarrying activities -- could have been achieved through the courts via a nuisance action, no property rights of Vulcan have been taken because Vulcan's use of its property was limited by the background principles of the Texas police power right to abate a nuisance.

B

Having determined that the Texas Supreme Court would apply the <u>Lucas</u> nuisance exception in the proper case, we now address the district court's holding that Vulcan's proposed activities inside Tehuacana City limits would constitute a nuisance under Texas law. We believe that its grant of summary judgment on this issue was error.

First, Texas law seems clear that the activities in which Vulcan seeks to engage -- those incident to the quarrying of limestone -- are not nuisances <u>per</u> <u>se</u>. <u>City of Dallas v. Newberg</u>, 116 S.W.2d 476, 478-79 (Tex. App.--Dallas, 1938, no writ); <u>Stone v. Kendall</u>, 268 S.W. 759, 761 (Tex. App.--Waco, 1925, no writ). Generally, a lawful business is not a nuisance <u>per</u> <u>se</u>; instead, "a lawful business or other activity may become a nuisance in fact because of the locality in which it is carried on, or because it is conducted in an improper manner." 54 TEX. JUR., *Nuisances* § 32 (2003); <u>see</u> <u>also</u> <u>Storey v. Central Hide & Rendering Co.</u>, 226 S.W.2d

25

615, 618 (Tex. 1950). Accordingly, if the City is to avoid payment of just compensation under the "nuisance exception" Vulcan's activities must constitute a nuisance in fact.

A nuisance in fact exists when an act, occupation, or structure becomes a nuisance as a result of its circumstances or surroundings. 54 TEX. JUR. 3D, *Nuisances* § 5 (2003). There is some confusion in Texas whether the determination of a nuisance is a question of fact or law: "Whether a given act or condition is a nuisance has been variously held to be a question of fact, a mixed question of law and fact, or a question of law." 54 TEX. JUR. 3D, *Nuisances* § 73 (2003). However, there is authority holding that, if the complained of activity -- here quarrying -- is not a nuisance <u>per se</u>, "it is for the jury to determine whether a particular thing, act, omission, or use of property ... is a nuisance in fact." <u>Id.</u>; <u>see</u> <u>also</u> <u>Domengeaux v. Kirkwood & Co.</u>, 297 S.W.2d 748, 749 (Tex. App.--San Antonio, 1956, no writ) (stating that "[t]he fact finder must determine whether a particular thing, act, omission, or use of property is a nuisance in fact"); <u>accord</u> <u>Gulf Oil Corp. v. Vestal</u>, 231 S.W.2d 523, 526 (Tex. App.--Fort Worth, 1950), <u>aff'd</u>, 149 Tex. 487, 235 S.W.2d 440 (Tex. 1951). The weight of authority is in agreement. <u>See</u> 58 AM. JUR. 2D *Nuisances* § 236 (2003)(stating that "it is the function of the trier of fact or jury to determine whether a nuisance exists, that is, whether a particular act, structure, or use of property which is not a

26

nuisance per se is one in fact, unless reasonable minds cannot differ on the issue"); 66 C.J.S. *Nuisances* § 143 (2003)(stating that "it is for the jury to decide whether a particular act or structure or use of property, which is not a nuisance per se, is a nuisance in fact").[13]

As discussed above, summary judgment is proper when, viewing the evidence in the light most favorable to Vulcan, no genuine issue of material fact exists and the City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Gillis, 294 F.3d at 758. In this case, we conclude that summary judgment was inappropriate because a reasonable jury could differ as to whether Vulcan's activities would constitute a nuisance under Texas law. Peel & Co., 238 at 398 n.37.

Initially, we acknowledge that there is persuasive evidence put forth by the City describing the negative impact quarrying has had on the City of Tehuacana -- i.e., concussion, noise, dust, vibration, shaking of houses and furniture, fly rock, depletion of groundwater, etc. We also recognize that these activities are occurring adjacent to public streets and near several homes.

---

[13]Our holding that whether Vulcan's quarrying activities would constitute a nuisance is a question of fact for the jury, does not conflict with our discussion supra that the ultimate question of whether there has been a regulatory taking is a question of law. Mayhew, 964 S.W.2d at 932-33 n.3. The existence of a nuisance is simply one of the factual issues that must be made in resolving the ultimate issue of whether a taking has occurred. Id.

Vulcan, however, challenges much of this evidence. For instance, Vulcan disputes the consideration of flyrock as contributing to the nuisance because the flyrock incident cited by the district court occurred while Smith Crushed Stone was operating the quarry. Instead, Vulcan contends that it has never had a flyrock incident during its operations at the Tehuacana quarry.

Second, Vulcan also discusses proactive measures it has taken to alleviate any adverse effects caused to Tehuacana residents as a result of its quarrying activities. These include implementing measures to effectively control dust, notifying neighboring landowners of impending blasts and only conducting drilling operations during regular weekday business hours, presumably when neighboring residents are at work. Moreover, Vulcan contends that it operates numerous quarries at other locations without complaint and, in one instance, less than 500 feet from a school. Further Vulcan contends that it has never been sued by anyone regarding its operations at the Tehuacana quarry nor has it ever been found to be in excess of state limits for vibration and noise.

For these reasons, we must conclude that summary judgment was error in this case. As compelling as the City's evidence of nuisance may seem to be, the fact of a nuisance was also contradicted by Vulcan's proffer. Accordingly, a jury question was presented on whether Vulcan's quarrying activities on Tracts 4-7 constitute a nuisance under Texas law.

VI

28

In sum, the district court's ultimate holding on summary judgment that the Tehuacana Ordinance was not a regulatory taking of Vulcan's property is VACATED and the case is REMANDED to the district court for a trial on whether Vulcan's proposed operation of the quarry on Tracts 4-7 constitutes a nuisance under Texas law, and such other issues as in the district court's judgment may become appropriate including, if necessary, a determination of Vulcan's damages.[14]

VACATED and REMANDED.

---

[14]We make clear that we are deciding this case under Texas law and, because many of the issues discussed herein have not been decided by the Texas Supreme Court, we are making an Erie guess. Consequently, our holding here is likely to have limited precedential value.