**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**March 23, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-60615
(Summary Calendar)

GRAND HOUSING, INC.; ET AL,

Plaintiffs,

VICKY BARNES,

Plaintiff-Appellant,

versus

BOMBARDIER CAPITAL, INC.; ET AL,

Defendants,

BOMBARDIER CAPITAL, INC.,
BOMBARDIER CAPITAL FLORIDA,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi
(1:02-CV-49-GuRu)

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiffs-Appellants Grand Housing and Vicky Barnes seek the reversal of the district court's grant of summary judgment for Defendants-Appellees Bombardier Capital, Inc. and Bombardier Capital Florida, Inc. (collectively "Bombardier"). We affirm for essentially the same reasons expressed by the district court.

BACKGROUND

In May of 1998, Grand Housing, a manufactured home dealership owned by Vicky Barnes ("Barnes"), entered into a Retail Dealer Agreement ("Dealer Agreement") with Bombardier Capital Florida. In the Dealer Agreement, Bombardier Capital Florida agreed to provide financing to retail customers who purchased manufactured homes from Grand Housing. Grand Housing also entered into an Inventory Security Agreement with Bombardier Capital in which Bombardier Capital agreed to provide floor financing for Grand Housing's manufactured home inventory. In 2000, Bombardier found that Grand Housing defaulted on the Dealer Agreement with respect to sales made to Patricia Reese, Charlotte Mitchell, and Dennis McDonald, and as a result, Bombardier withheld from Grand Housing the proceeds from those sales.

On November 12, 1998, Patricia Reese purchased a mobile home from Grand Housing that was financed by Bombardier. Grand Housing asserts that Reese represented to them that all city and county zoning ordinances had been complied with in the installation of the mobile home. Nonetheless, it was later determined that the installation of the mobile home did not comply with local zoning ordinances. Grand Housing removed the home pursuant to a directive from the City of Gulfport, Mississippi. On August 17, 2000, Bombardier demanded that Grand Housing repurchase Patricia Reese's security instrument pursuant to the terms of the Dealer Agreement.

2

In the misty of the dispute over Reese, Bombardier found Grand Housing in default of the Dealer Agreement again, this time with respect to the sale of a mobile home to Charlotte Mitchell. Shortly after Mitchell purchased her home, she stopped payments and initiated suit against Grand Housing. She alleged that her manufactured home was riddled with manufacturer defects, as well as defects in the materials and workmanship of the mobile home. Grand Housing contends that Bombardier repossessed the home without their knowledge, and then inexplicably lost the home. On August 21, 2000, Grand Housing received a demand letter from Bombardier concerning Charlotte Mitchell's security instrument.

Bombardier issued a demand letter yet again, on September 28, 2000, commanding that Grand Housing repurchase the security instrument of Dennis McDonald. McDonald acquired a mobile home from Grand Housing and then, like Mitchell, initiated suit alleging his home was defective. Specifically, he alleged that he suffered personal injury from airborne mold and spores emanating from his mobile home.

On January 2, 2002, Grand Housing filed suit in the Circuit Court of Harrison County, Mississippi, asserting entitlement to the withheld sale proceeds. The complaint alleged that Bombardier was liable for conversion, tortious interference with prospective economic advantage, breach of the Dealer Agreement, and breach of the implied duty of good faith and fair dealing. Bombardier removed the case to the United States District Court, for the Southern District of Mississippi, and filed a motion for summary judgment. The district court granted the motion for summary judgment. This timely appeal followed.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*, applying the same legal

standards used by the district court. Vulcan Materials Co. v. City of Tehuacana, 369 F.3d 882, 886 (5th Cir. 2004). Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). We review the district court's legal conclusions *de novo*. Triad Elec. & Controls, Inc. v. Power Sys. Eng'g, Inc., 117 F.3d 180, 186 (5th Cir. 1997). The interpretation of an unambiguous contract presents a question of law, and thus, is subject to *de novo* review. Id. at 186; see also L & A Contracting Co. v. Southern Concrete Servs., Inc., 17 F.3d 106, 109 (5th Cir. 1994).

Grand Housing argues that the district court erred in granting summary judgment because there are genuine issues of material fact in dispute. Specifically, Grand Housing contends that there are factual disputes as to whether: 1) it was in default under the terms of the Dealer Agreement, 2) Bombardier improperly withheld funds, 3) Bombardier breached the implied duty of good faith and fair dealing, and 4) Bombardier breached a fiduciary duty owed to Vicky Barnes.

Despite Grand Housing's assertions to the contrary, there are no factual disputes in the instant case to preclude a ruling on summary judgment; only legal questions as to the interpretation of the relevant contracts are left for us to review.[1] We interpret contracts under Mississippi law using the "four corners" doctrine, meaning, we exam the contract in its entirety and read its terms as would an ordinary layman. Pursue Energy Corp. v. Perkins, 558 So.2d 349, 352 (Miss. 1990). Under Mississippi law, we are prohibited from looking outside the plain language of the contract unless the contract is ambiguous. Heritage Cablevision v. New Albany Electric Power System of City of New

---

[1] Because Grand Housing does not brief arguments for conversion and tortious inference, we deem those arguments waived and do not address them here. United States v. Fagan, 821 F.2d 1002, 1015 n.9 (5th Cir. 1987) (arguments not briefed are deemed waived); see also Davis v. Maggio, 706 F.2d 568, 571 (5th Cir. 1983) (commenting that "[c]laims not pressed on appeal are deemed abandoned").

Albany, 646 So.2d 1305, 1313 (Miss. 1994).  We agree with the district court that the contracts at issue here are unambiguous.  The district court determined that based on the express contract language, Grand Housing did default under the Dealer Agreement as to each challenged sales transaction, and consequently, Bombardier had the contractual right to demand payment and/or repurchase.  Accordingly, the district court found that Bombardier was entitled to judgment as a matter of law as to Grand Housing's breach of contract claim.  Our review of the briefs, the applicable contracts and the record on appeal, leads us to the same conclusion reached by the district court.

Grand Housing adamantly maintains that it was not in default of the Dealer Agreement with respect to Patricia Reese, and therefore, Bombardier breached the terms of the Dealer Agreement by withholding funds from the Reese sale.  We disagree.  Section 6(i) of the Dealer Agreement clearly states that the Dealer (Grand Housing) warranties that:

> Unless [Bombardier] has agreed otherwise in writing, the Home shall be duly delivered and set in place by Dealer in a good and workmanlike manner, and accepted by the Consumer in good and habitable condition and working order, and shall conform with all warranties, express or implied, representations, legal obligations and local, state and federal requirements and codes concerning the condition, constructions, and placement of the Home.

Because the Reese home failed to comply with Gulfport's zoning ordinances, the plain language of the contract dictates that Grand Housing was in default.  Furthermore, a judicial determination of default was unnecessary because Section 8 of the Dealer Agreement states that the "Dealer shall be in default of this Agreement if (i) any warranty, covenant or representations contained herein *is determined by [Bombardier] to be untrue or false*, whether or not such misrepresentations were knowing or intentional and whether or not [Bombardier] relied upon thereon . . ."

5

Nonetheless, Grand Housing asserts that Bombardier failed to comply with the Remedy provision of the Dealer Agreement by refusing to give them ninety days from the date of demand to repurchase the security instrument. The Remedy provision states that the "Dealer will have ninety (90) days from the date of [] demand to repurchase the Security Instrument, *provided that* (i) any delinquency on account of the affected Security Instrument is cured within ten (10) days of [] demand, *and* (ii) the Security Instrument is kept current during the ninety (90) day period." Grand Housing conveniently ignores this conditional aspect of the Remedy provision. Because Grand Housing did not cure the delinquency within 10 days and did not keep the instrument current, Bombardier had the contractual right to demand immediate repurchase of the security instrument.

Grand Housing's argument that it did not default as to Charlotte Mitchell's account is similarly without merit. In Section 6(i) of the Dealer Agreement, Grand Housing expressly warrantied that it would deliver the Home in a "good and workmanlike manner, and the Home would be accepted by the Consumer in good and habitable condition and working order." Moreover, the Remedy provision states that "[i]f Dealer fails to repurchase any Security Instrument under this Agreement, [Bombardier] will have the right to take possession of the Collateral without notice to Dealer . . ." and the Dealer still "will remain liable for any deficiency." The default was triggered because Mitchell asserted that her mobile home was not delivered in a "good and habitable condition." As a result, Bombardier did not breach the Dealer Agreement by withholding the proceeds from the sales transaction.

For substantially the same reasons, we find Grand Housing's argument that it was not in default of the Dealer Agreement with respect to Dennis McDonald unavailing. Section 6(i) also controls here and by virtue of McDonald's allegations of a defective home, Grand Housing runs afoul

6

of the Dealer Agreement.

The plain language of the contract controls and requires finding Grand Housing in default as to each of the challenged sales transactions. Grand Housing did not adhere to the requirements of the Remedy provision in any of the defaults. Therefore, Bombardier permissively withheld the challenged funds, and the district court correctly concluded that Bombardier was entitled to judgment as a matter of law.

Grand Housing also claims that Bombardier did not act in good faith in discontinuing its floor financing and by arbitrarily reducing its credit line. Grand Housing asserts that Bombardier utilized its stronger economic position to place Grand Housing in an adverse financial condition. Under Mississippi law, "[a]ll contracts contain an implied covenant of good faith and fair dealing in performance and enforcement." Cenac v. Murry, 609 So.2d 1257, 1272 (Miss. 1992) (citation omitted). "The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." Id. Bad faith requires a showing of more than negligence; rather, "bad faith" implies some conscious wrongdoing "because of dishonest purpose or moral obliquity." Bailey v. Bailey, 724 So.2d 335, 338 (Miss. 1998). Grand Housing presents no evidence to even suggest that Bombardier's intent was to maliciously harm Grand Housing. The record indicates that Bombardier at all times acted within its contractual authority. See American Bankers' Ins. Co. of Fla. v. Wells, 819 So.2d 1196 (Miss. 2001) (holding that defendants did not breach duty of good faith where they took only those actions duly authorized by the contract). The Inventory Security Agreement allowed Bombardier to provide financing to Grand Housing "at its option;" accordingly, Bombardier was free to reduce or withdraw any financing it provided to Grand Housing. Therefore, the district court correctly held that Bombardier should be granted summary

judgment as to this claim.

Finally, Vicky Barnes brings an individual action against Bombardier for breach of fiduciary duty. Barnes executed an individual guaranty with Bombardier under which Barnes agreed to indemnify Bombardier from all losses and expenses incurred in connection with the enforcement of the guaranty. Barnes asserts that the existence of the guaranty agreement created a fiduciary relationship between herself and Bombardier. She contends that Bombardier breached its fiduciary duty to her because, as a shareholder and employee of Grand Housing, she suffered personal losses when Bombardier improperly withheld funds from Grand Housing. For the reasons already stated by the district court, we do not find a fiduciary relationship existed between Barnes and Bombardier. Thus, Barnes has failed to establish a claim for breach of a fiduciary duty.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Bombardier.

AFFIRMED.