# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2013

No. 12-50293
Summary Calendar

Lyle W. Cayce
Clerk

RABBI MARK ABDELHAK,

Plaintiff - Appellant

v.

CITY OF SAN ANTONIO,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-804

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Rabbi Mark Abdelhak appeals the dismissal of his claims against the City of San Antonio ("the City") arising from the denial of new permits for mobile homes on his property that did not meet City-regulated public-safety standards. We AFFIRM.

Abdelhak owns property in San Antonio, Texas, that he operates as a mobile home trailer park. Part of the property is located within the Federal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50293

Emergency Management Administration ("FEMA") 100-year floodplain, which imposes restrictions on development in flood-risk areas. In 1999, the property was flooded after a significant rainfall and the City ordered Abdelhak to shut down the park pending compliance with specific public safety requirements.[1] Abdelhak then filed suit in Texas state court to enjoin the City's action. The parties eventually reached a settlement agreement, subject to final approval by the San Antonio City Council. The 2003 settlement provided that Abdelhak could obtain any mobile home permits on the property to which he was legally entitled.[2] The City Council ultimately approved the settlement in 2005.[3] Afterwards, Abdelhak continued to operate the mobile home park, and new tenants and homes were brought into the park.

In 2007, another major rain event flooded Abdelhak's property, necessitating that emergency crews rescue tenants from the flood waters. The City temporarily cut off electrical service to the park, then stopped issuing new permits for electrical hookups to future tenants. The City maintains that Abdelhak must comply with health and safety ordinances relating to the floodplain before allowing new tenants onto the property, which would require raising building levels at the property by as much as eleven feet. The City has

---

[1] The City administers the floodplain in the San Antonio region on behalf of FEMA. In order to participate in the National Flood Insurance Program, the City must enforce floodplain regulations, and has enacted ordinances to do so. *See* City of San Antonio Unified Dev. Code ("UDC"), App. F. The ordinances restrict development in the 100-year floodplain to include the placement of new structures on such property without prior obtaining a floodplain development permit. *Id.*

[2] The settlement agreement provided that the City would "restore to [Abdelhak] all of the permits for mobile home spaces that [he] may lawfully place upon his property and still be in compliance with all applicable code requirements applicable to all mobile home parks."

[3] The City Ordinance approved stated in relevant part that "[the City] will restore all permits for mobile home spaces that [Abdelhak] may lawfully have on his property."

2

No. 12-50293

not permitted new mobile home units on Abdelhak's property since the second flood.

Abdelhak filed this action in district court as a result of the damage to his business operations.  He alleged violations of the Takings, Equal Protection and Due Process Clauses under the U.S. and Texas Constitutions.  He also asserted breach of contract, tortious interference with contracts, illegal seizure, and § 1983 deprivation claims.  The district court assigned the case for pretrial matters to a magistrate judge.  The magistrate issued a report recommending that the City's motion be granted such that Abdelhak's constitutional claims be dismissed without prejudice as unripe.  The magistrate recommended that summary judgment be granted on the claims for breach of contract, tortious interference with contract, illegal seizure, and § 1983 deprivation.  The district court adopted the recommendation and entered judgment in favor of the City.  Abdelhak timely appealed.

We review a district court's dismissal for lack of subject-matter jurisdiction de novo, using the same standards as those employed by the lower court.  *See Rodriguez v. Tex. Comm'n on the Arts*, 199 F.3d 279, 280 (5th Cir. 2000).  Ripeness is a component of subject-matter jurisdiction.  *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).  We must take as true all of the complaint's uncontroverted factual allegations, *see Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995), and will affirm the dismissal if "the court lacks the statutory or constitutional power to adjudicate the case."  *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation quotation marks omitted).  Appellants have the burden of demonstrating subject-matter jurisdiction.  *See Stockman v. FEC*, 138 F.3d 144, 151 (5th Cir. 1998).

A grant of summary judgment is reviewed de novo.  *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  We apply the same legal

3

No. 12-50293

standards that the district court would use. *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486 (5th Cir. 2004). "A summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Id.* Facts are material only if they could affect the lawsuit's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case." *Boudreaux*, 402 F.3d at 540 (internal citation and quotation marks omitted).

On appeal, Abdelhak raises two issues.[4] First, he contends that his takings claims are ripe. Second, Abdelhak argues that a genuine issue of material fact exists concerning the terms of the settlement agreement, rendering summary judgment inappropriate on his breach of contract claim. Both issues address the effect of the settlement agreement.

Abdelhak has the burden of proving the ripeness component of subject matter jurisdiction. *See Stockman,* 138 F.3d at 151. To do so, Abdelhak must raise a genuine issue of material fact that he was not required to seek permits and variances under the City's ordinances, or else demonstrate that he obtained a "final decision" from the City as to how regulations will be applied to his land use. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985).

---

[4] Abdelhak did not raise on appeal the other claims he made in the district court: tortious interference with business contracts, illegal seizure, § 1983 deprivation, due process violations, and equal protection violations. Therefore, we conclude he has abandoned these claims. *See Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993).

No. 12-50293

Abdelhak does not cite any statute, rule, or regulation that exempts him from compliance with any provision of the City's floodplain ordinances. Nor does he contend that he is in compliance with the applicable floodplain laws. Rather, he argues that the terms of the earlier settlement agreement effectively exempted his property from the City's floodplain regulations. As such, he would not be required to apply for permits or variances for the property. Because the City breached that agreement, he argues, there has been a final decision and the claim is ripe for adjudication.

The district court determined that the settlement agreement was not ambiguous. Under Texas law, whether a contract is ambiguous is a question of law. *Addicks Serv., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010). "Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." *Id.* The court found that the plain language of the agreement did not evidence the property's intended exemption from the City's floodplain regulations, and thus did not credit Abdelhak's interpretation of the contract.

We agree. The language of the settlement agreement requires that the City must provide permits on the property for any of the sixty-four mobile home spaces that are "lawful," that is, that are "in compliance with all applicable code requirements applicable to all mobile home parks." The agreement does not suggest that the property is in any way exempt from complying with the City's floodplain regulations.[5] Since the City's floodplain regulations apply to mobile

---

[5] Abdelhak appears to argue that the slight difference in language between the parties' settlement agreement and the City ordinance approving the settlement indicates the latent ambiguity in the contract. He claims the ordinance then constitutes the "controlling language," because the settlement was not final until fully approved by the City Council. This argument is unavailing—there is no evidence that the ordinance supercedes the negotiated agreement. However, even if it did, the slightly different language still does not support Abdelhak's arguments and does not render the contract ambiguous. Although the additional phrase "and still be in compliance with all applicable code requirements applicable to all mobile home parks" is not present in the Council language, the ordinance nevertheless only

home parks, the language, fairly read, appears to explicitly contemplate that new permits would be contingent upon compliance with these, and other, regulations. Because the agreement is not ambiguous, "the agreement must be enforced as it is written," *id.*, and "parol evidence of intent cannot be admitted for the purpose of creating an ambiguity," *see Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996).[6]

Because the agreement does not entitle Abdelhak to the contractual relief he claims, he needs to otherwise demonstrate a "final decision" in order to bring a taking claim. *See Williamson Cnty.*, 473 U.S. at 187–88. The district court found that because Abdelhak did not apply for a variance after the City Department of Public Works denied permits for the mobile homes, there had not been a "final decision" giving rise to a taking. A final decision "requires both a rejected development plan and the denial of a variance from the controlling regulations." *Id.* Procedures for requesting a variance from the floodplain regulations are specifically set out in § 35-F135 of the UDC. While "[f]utile variance requests or re-applications are not required" to reach a final decision, *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992), Abdelhak did not demonstrate that a variance request was futile. The summary judgment

---

commits the City to restore permits for mobile home spaces that may "lawfully" be on Abdelhak's property. This language does not support an argument that the City waived the right to enforce its floodplain regulations on Abdelhak's property.

[6] Abdelhak contends the agreement is ambiguous so as to introduce extrinsic evidence about the intent and conduct of the parties after the settlement. He argues the City's restoration of mobile home permits demonstrates its intent to not enforce the floodplain regulations on his property ever again. Because the agreement is not ambiguous, the evidence is not admissible. Nonetheless, even if it were, it does not tend to demonstrate that the City intended to "contract away" its power to enforce public safety regulations on the property from that point on, especially in light of the intervening circumstances of the second flood event. The ability to protect the health and safety of residents within the floodplain, as well as the general residents of San Antonio, is of extreme importance. Ordinances aimed at protecting the health and safety of citizens are squarely within the City's police powers. *See Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 887 (5th Cir. 2004). The settlement cannot be read as rescinding that authority

evidence indicates that City Department of Public Works staff stated they would not support a variance from the floodplain regulations for Abdelhak's property. However, variances are reviewed and granted by the Planning Commission, a separate unit of the City organization. The Public Works Department did not render a final decision regarding the application of the floodplain ordinances to the property by denying permits for new mobile homes. Nor was Abdelhak able to provide legal support for his argument that his subjective belief that such an application for variance was futile demonstrated futility as a matter of law.

Accordingly, Abdelhak failed to show either that he is exempt from the City's floodplain regulations, or that he was not required to seek a variance in order to have a "final decision" rendered on his property. As a result, the district court properly concluded that the takings claims are unripe.[7] Because this claim is dismissed without prejudice, Abdelhak may choose to bring the claim again once a final decision has been rendered on the property.

Abdelhak's second issue on appeal concerns the City's alleged breach of the settlement agreement and is addressed by our discussion above. The parties' settlement agreement was not ambiguous as a matter of law, and its language cannot be interpreted as a waiver of any City code or provision. Abdelhak thus failed to raise a genuine issue of material fact regarding the City's alleged breach. The district court therefore did not err in granting summary judgment and dismissing Abdelhak's breach of contract claim with prejudice.

AFFIRMED.

---

[7] Because we affirm the district court's determination that the takings claim was not ripe for consideration, we do not consider the City's alternative grounds for affirmance.